nesses named in bill No. 3. The purpose for which the defendant desired the testimony of the six witnesses was to contradict a statement made by the state's witness on cross-examination, regarding an occurrence nine months subsequent to the date of the alleged offense. The bills of exception do not explain or disclose the relevancy of the testimony which the defendant desired to obtain from the six witnesses referred to; and the judge says, in his statements per curiam, that the testimony of the state's witness, which the defendant contended could be contradicted or impeached, was not material or even relevant to the question of guilt or innocence of the defendant. The rulings, therefore, complained of in bills No. 2, No. 3 and No. 4 were correct.

The conviction and sentence are affirmed.

(131 So. 194)

**MURFF v. RATCLIFF.**

No. 30755.

Nov. 3, 1930.

Edward Barnett, of Shreveport, for appellant.

Murff & Perkins and Jos. H. Levy, all of Shreveport, for appellee.

O'NIELL, C. J.

The defendant has appealed from a judgment, rendered in a hypothecary action, ordering him to pay the plaintiff $231.50, with interest and costs, or suffer a certain house and lot, belonging to him, to be seized and sold to satisfy a judgment held by the plaintiff against Ben Jamison, whose homestead the property once was. The defendant, Ratcliff, held a mortgage on the property, recorded before the plaintiff's judgment was recorded, and a waiver of Jamison's homestead exemption; but Ratcliff neglected to have his mortgage reinscribed within ten years from the date of its registry, and the plaintiff's judicial mortgage against Jamison therefore became the first in rank. Thereafter, Ratcliff had his mortgage reinscribed, and foreclosed the mortgage, and bought the property at the sheriff's sale, in part satisfaction of the debt which the mortgage was given to secure. The plaintiff, Murff, then brought this hypothecary action against Ratcliff, who defended on the ground that, as he held a waiver of Jamison's homestead exemption, his mortgage was superior in rank to the judicial mortgage in favor of Murff, notwithstanding the neglect of Ratcliff to reinscribe his mortgage within the ten years. Murff contended that Jamison had lost his homestead exemption, as to all creditors, by a conventional sale of the property by Jamison to Ratcliff, and resale by Ratcliff to Jamison, before Ratcliff foreclosed his mortgage against Jamison. The district court sustained Murff's contention; and Ratcliff brought his appeal to this court on the theory that the case was one involving a homestead exemption, and that the Supreme Court had jurisdiction under the provision in section 10 of article 7 of the Constitution 1921, viz.:

"Its appellate jurisdiction shall also extend to all cases involving homestead exemptions irrespective of the amount involved, and the appeal on the law and the facts shall be directly from the court in which the case originated to the Supreme Court; except that in cases involving only movable property, the appeal shall lie to the court having jurisdiction [by reason] of the amount or the value of the property involved."

This is not a case involving a homestead exemption, in the meaning of the language quoted. What is meant by a case involving a homestead exemption is a case in which one of the parties to the litigation claims the benefit of the homestead exemption. That is made plain by the proviso in the Constitution that, in cases *involving* only movable property, the appeal shall lie to the court having jurisdiction by reason of the amount or value of the *property involved*. The word "involved" is used there as meaning "in contest." Jamison is not a party to this litigation and has no interest in it. Although a decision of the contest between Murff and Ratcliff, involving only $231.50 besides the interest and costs of court, may depend upon the question whether Jamison's homestead was exempt from seizure under Murff's judgment when Ratcliff foreclosed his mortgage, the homestead exemption which Jamison once enjoyed is not the subject-matter in controversy, or "involved," in the sense in which the word is used in the Constitution.

There is no reason, however, why the appeal should be dismissed instead of being transferred to the Court of Appeal.

This case is ordered transferred to the Court of Appeal for the Second Circuit, provided the appellant shall file the record in that court within thirty days from the date on which this decree becomes final; otherwise the appeal shall stand dismissed. The

appellant is to pay the costs of the appeal to this court; all other costs are to abide the final disposition of the case.